UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARGARET THURBER,

                Plaintiff,                **DECISION AND ORDER**

        v.                                   6:20-CV-06152 EAW

FINN ACADEMY: AN ELMIRA CHARTER
SCHOOL, BOARD OF TRUSTEES OF FINN
ACADEMY: AN ELMIRA CHARTER
SCHOOL, and MARTINA BAKER,

                Defendants.
_____

**INTRODUCTION**

Plaintiff Margaret Thurber ("Plaintiff") brings numerous state and federal claims against defendants Finn Academy: An Elmira Charter School (the "School"), the Board of Trustees of Finn Academy: An Elmira Charter School (the "Board"), and Marina Baker ("Baker") (collectively "Defendants") arising out of her former relationship with the School. (Dkt. 1). Presently before the Court are Defendants' motion to dismiss the complaint for failure to properly serve pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 2), and Plaintiff's cross-motion for leave to amend (Dkt. 6). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part and Plaintiff's cross-motion for leave to amend is denied.

# BACKGROUND

## I. Factual Background

The following facts are taken from Plaintiff's complaint. (Dkt. 1-1 at 12-33). As is required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

The School is "an education corporation engaging in education of students as a public charter school, operating as a 501(c)(3) not-for-profit corporation, in the City of Elmira, County of Chemung and State of New York[.]" (*Id*. at 12). The Board is the entity "vested with . . . authority to make decisions and conduct acts on behalf of" the School. (*Id*.).

On June 4, 2014, the Board of Trustees of the State University of New York (the "SUNY Board") authorized the School's charter and recommended for approval by the New York State Board of Regents (the "Board of Regents") a five year term, with "an August 2015 opening for 180 students in grades K-3." (*Id*. at 13). The SUNY Board executed a charter contract to Plaintiff, on behalf of the School, on July 17, 2014. (*Id*.). The School was chartered by the Board of Regents on or about October 15, 2014. (*Id*.).

Plaintiff was the lead applicant for the School's charter as defined by New York Education Law § 2851. (*Id*.). She drafted the School's 1303-page application for a charter and wrote the School's "original and authentic curriculum framework[.]" (*Id*. at 13-14). Plaintiff asserts that "[t]he name 'Finn Academy' and the concepts and expressions comprising [the School's] curriculum framework, mission, design elements and

implementation methodology proposed in the Charter" are her intellectual property. (*Id*. at 15).

In July 2014, the School and the Board represented to Plaintiff that they wanted to use the name "Finn Academy" and "adopt and implement the curriculum framework, mission, design elements and implementation methodology developed by" Plaintiff, and that they further wished to engage her services via a five-year contract. (*Id*.). The School and the Board represented to Plaintiff that she would be provided with five years of compensation, health insurance, and other fringe benefits, that she "would be afforded due process prior to any termination," and that she would receive severance upon termination of the five-year term. (*Id*.). Plaintiff was "repeatedly promised by Defendants that a written contract with these terms would be executed." (*Id*.).

The Board held its initial meeting on or about October 21, 2014, at which time it commenced the School's operation, adopted bylaws, and hired and designated Plaintiff as "Head of School" and an *ex officio* member of the Board. (*Id*.). At its meeting on June 26, 2016, the Board officially named Plaintiff as Chief Executive Officer of the School. (*Id*. at 19).

On or about August 15, 2016, Baker resigned her position as a member of the Board and was hired by the School as its Chief Operations Officer ("COO"). (*Id*. at 21). In September 2016, Plaintiff informed the Board's treasurer of "fiscal irregularities" with respect to Baker's actions as COO. (*Id*. at 22-23). Then, at a special meeting of the Board on October 3, 2016, Plaintiff notified the entire Board of Baker's "violation of [the School's] Bylaws and Fiscal Policies and Procedures." (*Id*. at 23).

The Board terminated Plaintiff's employment with the School on or about January 9, 2017. (*Id.* at 19). The Board never voted in a public meeting to terminate Plaintiff and neither the School nor the Board provided Plaintiff with any written notice prior to her termination. (*Id.*). Plaintiff was not paid any severance upon her termination, nor did she receive the full pay or salary that she had earned through her date of termination. (*Id.*). Plaintiff further was not paid for her accrued benefit time, nor were certain loans she had made to the School paid back as agreed. (*Id.* at 19-20).

## II.     **Procedural Background**

Plaintiff commenced the instant action in New York State Supreme Court, Chemung County, on October 4, 2019, by filing a summons with notice. (Dkt. 1 at ¶ 1). On January 31, 2020, Plaintiff served Baker with three copies of the summons with notice by personal delivery. (*Id.* at ¶ 2). The School and the Board filed a demand for a complaint on or about February 12, 2020, and Baker filed a demand for a complaint on or about February 20, 2020. (*Id.* at ¶¶ 3-4). Plaintiff filed the complaint on or about February 25, 2020. (*Id.* at ¶ 5).

Defendants removed the matter to this Court on March 13, 2020. (Dkt. 1). That same day, Defendants filed the instant motion to dismiss. (Dkt. 2). On May 13, 2020, Plaintiff filed her opposition to the motion to dismiss and cross-motion for leave to amend. (Dkt. 6; Dkt. 7). Defendants filed their reply in further support of their motion to dismiss and their response to Plaintiff's motion for leave to amend on May 27, 2020. (Dkt. 8).

## DISCUSSION

**I.      Request for Dismissal Pursuant to Rule 12(b)(5)**

The Board seeks dismissal of all of Plaintiff's claims against it pursuant to Rule 12(b)(5), on the basis that it has not been properly served. In particular, the Board argues that it could not be served by personal delivery to Baker, because Baker was not a member of the Board at the time of service. (Dkt. 2-13 at 27-28). In opposition, Plaintiff contends that Baker was an *ex officio* member of the Board during the relevant time period and that service was accordingly proper. (Dkt. 7 at 13-14).

"In considering a motion to dismiss for insufficient service in cases removed to federal court and where service was attempted only before removal, the propriety of service is determined by reference to state law." *Millet v. Selip & Stylianou LLP*, No. 15-CV-773, 2020 WL 979787, at *1 (W.D.N.Y. Feb. 28, 2020). In New York, service on a "court, board or commission" is governed by section 312 of the New York Civil Practice Law and Rules ("CPLR"). Under CPLR 312, service on the Board could be effectuated by delivery to any member thereof. *See Perreten v. Westchester Cty. Bd. of Health*, 146 A.D.2d 779, 780 (2d Dep't 1989) ("Proper service upon any one of the members of the board, in accordance with the general rule set forth in the last sentence of CPLR 312, is sufficient to confer personal jurisdiction over the board.").

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint. . . ." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). In opposition to Defendants' motion to dismiss, Plaintiff has submitted minutes of a meeting of the Board on July 10, 2017, showing that

Baker was made an *ex officio* member of the Board on that date. (Dkt. 6-5 at 4). Minutes from the Board's meetings on August 7, 2017, October 7, 2019, and February 10, 2020, list Baker as an *ex officio* member under "Roll Call." (*Id.* at 6; Dkt. 6-6 at 2, 6).

In reply, Defendants do not contest that Baker was an *ex officio* member of the Board at the time she was served. Instead, they cite a New York State Supreme Court case from 1960 that they contend supports the conclusion that service on an *ex officio* board member is improper, *Plainview Plumbing & Heating Co. v. Ethical Culture Soc. of Long Island, Inc.*, 24 Misc. 2d 1005 (N.Y. Sup. Ct., Nassau Cty. 1960). However, *Plainview Plumbing* involved whether service on an *ex officio* member of a board of directors was sufficient to serve the corporation, not the board itself. *Id.* at 1006. The standards for service on a corporation and for service on a board are different under the CPLR, and the dispositive fact in *Plainview* was not the individual's *ex officio* status. *See Romand v. Zimmerman*, 881 F. Supp. 806, 811 (N.D.N.Y. 1995) (finding that service on chairperson of the board of trustees was insufficient to give notice to hospital under CPLR 311, which governs service on corporation).

Neither party has cited, nor has the Court found in its own research, any cases considering whether service on an *ex officio* member of a board satisfies the requirements of CPLR 312. Accordingly, the Court must examine the statutory language itself. CPLR 312 refers generally to service on "any one of the members" of a board; nothing therein suggests that *ex officio* members are excluded from this broad category. As Black's Law Dictionary explains, there is a distinction between a limited or nonvoting member of a board and an *ex officio* member; an *ex officio* member is simply "[a] member who serves

- 6 -

on a board or committee by virtue of holding an office, and whose membership will therefore pass with the office to his or her successor." MEMBER, Black's Law Dictionary (11th ed. 2019); *cf. Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 84 (2d Cir. 2000) (assuming that in their positions as *ex officio* members of the Yale College governing board, the governor and lieutenant governor of Connecticut "attended every board meeting and vigorously participated"). Moreover, there is precedent in New York law for treating *ex officio* members as board members for legal purposes. For example, the New York Court of Appeals has held that the presence of three *ex officio* members and a lay trustee was sufficient to constitute a quorum of the board of trustees of a religious corporation. *Blaudziunas v. Egan*, 18 N.Y.3d 275, 279 (2011). The Court finds no basis to conclude that the phrase "any one of the members" as used in CPLR 312 excludes *ex officio* members. As such, the Board was properly served via personal delivery to Baker, and dismissal under Rule 12(b)(5) is not warranted.

## II.   Request for Dismissal Pursuant to Rule 12(b)(6)

### A.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Plaintiff's State Law Claims

In the complaint, Plaintiff asserts five claims that either fully or partially arise under state law: (1) a claim that Defendants violated the whistleblower provisions of the School's bylaws by taking adverse employment actions against Plaintiff after she reported Baker's claimed financial improprieties (Plaintiff's first cause of action); (2) a claim that Plaintiff was not paid her accrued benefit pay (Plaintiff's fourth cause of action); (3) a claim for wage violations pursuant to New York Labor Law (the "NYLL") (Plaintiff's fifth cause of action); (4) a claim for breach of contract (Plaintiff's sixth cause of action); and (5) a claim for unjust enrichment (Plaintiff's eighth cause of action). Defendants seek dismissal of all of Plaintiff's state law claims on the basis that Plaintiff failed to timely file and serve a notice of claim as required by New York Education Law ("Education Law") § 3813(1) and

further failed to commence her action within the one-year statute of limitation set forth in Education Law § 3813(2-b).  (Dkt. 2-1 at 11-15); *see also Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 368 (E.D.N.Y. 2018) ("New York law requires a plaintiff to file a notice of claim prior to commencement of an action against a school district and/or its employees within 90 days after the claim arises. . . .  This requirement has been extended to charter schools."); *Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 36 (E.D.N.Y. 2005) ("[T[he notice of claim requirement in N.Y. Educ. Law 3813(1) and the one-year limit in 3813(2–b) clearly applies to all New York State actions or proceedings.").

Plaintiff disputes Defendants' contention that she did not timely file and serve the requisite notice of claim.  (Dkt. 7 at 17-18).  However, she concedes that her fourth, sixth and eighth causes of actions are time-barred under Education Law § 3813(2-b), having not been commenced within one year of their accrual.  (*Id.*).  Plaintiff further concedes that her fifth cause of action is time-barred to the extent it is asserted pursuant to the NYLL, but contends that she has nonetheless stated a viable claim under the federal Fair Labor Standards Act (the "FLSA") (Dkt. 7 at 19); the Court considers the adequacy of Plaintiff's FLSA claim below in its assessment of Plaintiff's federal causes of action.

Plaintiff does not concede that her first cause of action is time-barred, though her argument in this regard is difficult to parse.  Plaintiff contends that the first cause of action "alleges that defendants violated plaintiff's rights as a whistleblower law [sic]" and that "[a] separate but integral component of this retaliation claim is the alleged violation of Plaintiff's rights to free speech (second cause of action), and deprivation of due process (third cause of action) related to the stigmatization and adverse employment consequence

that befell Plaintiff by reporting Baker's wrongdoing." (Dkt. 7 at 18). These arguments do not save Plaintiff's first cause of action.

First, to the extent Plaintiff is trying to assert a violation of a New York state whistleblower law, such a claim, like all her state law claims, is time-barred under Education Law § 3813(2-b). Plaintiff has further not alleged a violation of any federal whistleblower law, nor even identified any such law in her complaint or opposition papers. The Court notes that the federal Whistleblower Protection Act applies only to federal employees and would not provide any relief to Plaintiff. *See* 5 U.S.C. 2303(b)(8)(A); *Hurley v. Ithaca City Sch. Dist. Bd. of Educ.*, No. 3:20-CV-0328 DNH ML, 2020 WL 1937561, at *5 (N.D.N.Y. Apr. 22, 2020) (dismissing federal Whistleblower Protection Act claim brought by former municipal employee); *Young v. Madison-Oneida Bd. of Co-op. Educ. Servs.*, No. 6:11-CV-375 LEK/GHL, 2012 WL 124593, at *2 (N.D.N.Y. Jan. 17, 2012) (same).

Second, to the extent Plaintiff is trying to contend that her first cause of action somehow incorporates her First Amendment retaliation and/or due process claims, that does not render it viable, but rather establishes that it is duplicative and subject to dismissal on that basis. *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Ore., Inc.*, 156 F.Supp.3d 348, 362 (E.D.N.Y. 2016) ("Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief.").

For all these reasons, the Court finds that Plaintiff's first, fourth, sixth, and eighth causes of action must be dismissed as time-barred. The Court further dismisses Plaintiff's fifth cause of action to the extent it alleges a violation of the NYLL.

## C. Plaintiff's Federal Claims

Plaintiff's complaint contains four causes of action that are entirely or partially based on federal law: (1) a claim for First Amendment retaliation (Plaintiff's second cause of action); (2) a claim for violation of Plaintiff's right to due process of law in connection with her termination (Plaintiff's third cause of action); (3) a claim for wage violations under the FLSA (Plaintiff's fifth cause of action); and (4) a claim for copyright and trademark infringement (Plaintiff's seventh cause of action). The Court considers the viability of each of these causes of action below.

### 1. First Amendment Retaliation and Deprivation of Due Process

The Court turns first to Plaintiff's claims for First Amended retaliation and termination without due process, both of which are asserted pursuant to 42 U.S.C. § 1983.[1] Defendants seek dismissal of these claims against the School and the Board on the basis that Plaintiff has not adequately alleged municipal involvement pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). (Dkt. 2-3 at 19). Defendants further contend that Plaintiff has not adequately alleged that Baker was personally involved in the deprivation of her rights. (*Id.* at 22-23).

Defendants' arguments based on *Monell* are misplaced. Under *Monell*, a municipality or other local government entity may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)

---

[1] The School and the Board do not dispute that they are "municipal entit[ies]" and state actors for purposes of § 1983. (Dkt. 2-3 at 12 & n.4).

(citing *Monell*, 436 U.S. at 692). "In other words, municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted). "[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* (quoting *Connick*, 563 U.S. at 60). Of particular relevance in this case, official municipal policy includes "the decisions of a [municipality's] lawmakers" and "the acts of its policymaking officials . . . ." *Connick*, 563 U.S. at 61.

Here, the relevant municipal entities are the School and the Board, its policymaking body. These are also the precise entities that are alleged to have retaliated against Plaintiff for her statements regarding Baker by terminating her employment and to have terminated Plaintiff without due process of law. Plaintiff is not, as Defendants seem to suggest, required to plead a broader policy or custom when it is the municipal entity itself that is alleged to have deprived her of her rights. *See Burdick v. Bath Cent. Sch. Dist.*, No. 6:19-CV-06426 EAW, 2020 WL 1435112, at *7 (W.D.N.Y. Mar. 24, 2020) (finding First Amendment retaliation claim adequately asserted against school board and school district where the school board was alleged to have eliminated the plaintiff's position in response to her complaints about conflicts of interest and the unlawful hiring of uncertified teachers).

Defendants also argue that Plaintiff's First Amendment retaliation claim is not properly pled because she failed to identify the specific retaliatory adverse employment actions she is claiming. "When evaluating a motion to dismiss, however, 'the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation,

in isolation, is plausible.'" *Nielsen v. Pioneer Bank*, No. 1:15-CV-623 GLS CFH, 2016 WL 4768798, at *5 (N.D.N.Y. Sept. 13, 2016) (quoting *Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 731 (2d Cir. 2013)). Earlier in her complaint, Plaintiff made clear that she is claiming that the Board improperly terminated her employment and, relatedly, failed to pay her various monies she was owed. Plaintiff was not required to specifically re-list those adverse employment actions to render her First Amendment retaliation claims against the School and the Board plausible.

However, the Court agrees that Plaintiff has not pled a viable § 1983 claim against Baker. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted). Here, the complaint is devoid of any allegations establishing that Baker played a personal role in Plaintiff's termination or in determining the process to be afforded to Plaintiff. To the contrary, Plaintiff alleges that it was the Board that made the decision to terminate her employment. (Dkt. 1-1 at 19). Plaintiff further affirmatively alleges that at the time she was terminated, Baker reported to Plaintiff, "had no authority to supervise staff," and was not a member of the Board. (*Id.* at 21).

Plaintiff does allege that Baker played an unspecified role in the investigation of Plaintiff's complaint and that Baker made unfounded, retaliatory complaints against Plaintiff. (*Id.* at 24). However, Plaintiff has not plausibly alleged that Baker's complaints or investigatory conclusions were a determinative factor in the Board's termination

decision. *See Cole-Hoover v. McDonald*, No. 10-CV-00669A(F), 2015 WL 11142684, at *17 (W.D.N.Y. Dec. 15, 2015) (finding no personal involvement in alleged constitutional deprivation by defendant who had not been personally involved in decision to terminate plaintiff, but was alleged to have "had a substantial influence or played a role in the adverse employment decision terminating Plaintiff's employment"), *adopted*, 2016 WL 3651695 (W.D.N.Y. July 8, 2016).

Further, as Defendants correctly argue (*see* Dkt. 2-3 at n.5), to the extent Plaintiff is attempting to sue Baker in her official capacity, such claims are duplicative of the claims against the School and the Board. *See Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 227 (E.D.N.Y. 2014) ("Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources."). Accordingly, Baker is entitled to dismissal of Plaintiff's § 1983 claims against her in their entirety.

### 2. **FLSA Wage Violation Claim**

Plaintiff's fifth cause of action asserts that Plaintiff was an employee and the School was an employer as defined in the FLSA, and that she "was caused to suffer work, and was not compensated by [the School] as required by law." (Dkt. 1-1 at 27-28).

The Court agrees with Defendants that Plaintiff has not plausibly alleged a violation of the FLSA. "To state a claim for unpaid minimum or overtime wages under the FLSA, a plaintiff must allege that: (1) there is an employer-employee relationship; (2) the

plaintiff's work or the employer's overall enterprise involves interstate commerce; and (3) the plaintiff worked for hours for which he did not receive minimum or overtime wages." *Hamza v. Yandik*, No. 1:19-CV-0447 LEK DJS, 2020 WL 2092487, at *10 (N.D.N.Y. May 1, 2020). "To adequately allege interstate activity for purposes of employer coverage, a plaintiff must state in the complaint that the defendant company: (a) is engaged in interstate commerce; (b) has at least two employees; and (c) has gross sales of not less than $500,000." *Id*. at *12. Further, "[t]o state a claim under the FLSA for a minimum wage or overtime wage violation, a plaintiff must allege at least an approximation of the hours he worked for an employer for which he received insufficient compensation, throughout the plaintiff's term of employment." *Id*. at *13.

Here, Plaintiff has not alleged that the either Baker or the Board was her employer. Further, Plaintiff has not alleged that the School was engaged in interstate commerce. *See id*. at *12 ("[A] plaintiff must, at a minimum, simply state that the company moves goods through interstate commerce. A court cannot infer this from a mere list of the plaintiff's job responsibilities, however obvious the inference may be."). Nor has Plaintiff offered an approximation of the hours for which she claims not to have been compensated. Her FLSA claim is accordingly not plausibly pled.

Moreover, Plaintiff's claim of an FLSA violation is time-barred. "The limitations period for FLSA claims is two years or, if the violation was willful, three years." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 199 n. 4 (2d Cir. 2013) (citing 29 U.S.C. § 255(a)). "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited

by' the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted). A plaintiff who wishes to take advantage of the extended statute of limitations must plausibly allege willful conduct by the employer. *See Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 CJS, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020). Here, Plaintiff has alleged no facts whatsoever related to the willfulness of the alleged FLSA violation, and any FLSA is also time-barred. *Id*. (dismissing FLSA claim because "it was filed beyond the two-year limitations period without any plausible allegation that Defendants acted willfully").

### 3. Copyright and Trademark Infringement

The Court turns next to Plaintiff's claims of copyright and trademark infringement. As to the copyright claim, "[c]opyright infringement is established by proving ownership of a valid copyright and copying of constituent elements of the work that are original." *Boisson v. Banian, Ltd*, 273 F.3d 262, 267 (2d Cir. 2001) (quotations omitted). "Subject to certain exceptions, the Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *see also* 17 U.S.C. 411(a) (with certain exceptions not relevant here, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). Here, Plaintiff appears to be asserting that she holds the copyright in the curriculum she created for the School. (Dkt. 7 at 15-16). However, Plaintiff has not pled that she has registered (or preregistered) this work, which is fatal to her copyright infringement claim. *See Biswas v. Rouen*, 808 F. App'x 53, 54 (2d Cir. 2020) (affirming

district court's dismissal of copyright infringement claim where the plaintiff's "allegations fail to state a claim under the Copyright Act because he did not register his paper for copyright").

As to Plaintiff's trademark infringement claim, Plaintiff acknowledges that she does not hold a registered trademark. (Dkt. 7 at 16-17). Section 43(a) of the Lanham Act protects against unregistered trademark infringement. *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003); *see also* 15 U.S.C. § 1125(a). "[A]n unregistered mark is entitled to Lanham Act protection if it would qualify for registration." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 214 n.2 (2d Cir. 2003). "To qualify for trademark registration, a mark must be either (1) inherently distinctive, where its intrinsic nature serves to identify its particular source; or (2) distinctive by virtue of having acquired a secondary meaning in the minds of consumers." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 302 (E.D.N.Y. 2014) (quotations and alteration omitted). Further, the mark must have been "used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark and must have been used in commerce, not merely adopted by the plaintiff." *Id*. (quotations omitted).

Here, Plaintiff claims to have an unregistered trademark in the name "Finn Academy." (Dkt. 7 at 16-17). Plaintiff explains that "Finn" in this context refers to the surname of the Mark Twain character Huckleberry Finn. (*Id*. at 6). "Words which are 'primarily merely a surname' may not be registered without proof of secondary meaning, proof that the mark has become distinctive of the applicant's goods.'" *Pirone v.*

*MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990) (quoting 15 U.S.C. § 1052(e), (f)). An unregistered trademark is distinctive if it "identifies the source of the product rather than the product itself," and "[f]actors that show such a distinctive mark . . . include advertising expenditures, consumer studies that link the name to a source, sales success, unsolicited media coverage, attempts to plagiarize the mark and the length of exclusive use of the mark." *Daniel R. Kaufman, CPA, LLC v. Vertucci*, No. 3:11CV912 WWE, 2011 WL 6001632, at *3 (D. Conn. Nov. 30, 2011) (quotation omitted).

Here, Plaintiff has failed to allege any facts to support the conclusion that her purported unregistered trademark is distinctive and protectable under the Lanham Act, and has accordingly not stated a plausible claim for trademark infringement. *Id.* at *3 (dismissing claim for infringement of unregistered trademark); *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 601 (E.D.N.Y. 2017) (dismissing Lanham Act claim where the plaintiff failed to plausibly allege protectable trademark interest).

Further, to the extent Plaintiff is trying to claim that she has an unregistered trademark in the curriculum she created for the School (*see* Dkt. 7 at 16), such a claim is not plausible. The Lanham Act does not offer protection for the "author of any idea, concept, or communication," as opposed to the producer of a tangible good, because "[a]ny other interpretation would expand trademark law beyond its intended scope and create a species of mutant copyright law." *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 547 (S.D.N.Y. 2018) (quotations omitted). Defendants' purported unauthorized use of the curriculum developed by Plaintiff simply does not come within the

scope of the Lanham Act.  Plaintiff has not stated a plausible claim for trademark infringement.

### III. Plaintiff's Cross-Motion for Leave to Amend

The Court turns finally to Plaintiff's cross-motion for leave to amend.  (Dkt. 6). Plaintiff specifically seeks leave to "amend the complaint to include reference to the service of notice of claim." (*Id*. at 1).

As an initial matter, the Court notes that Plaintiff's motion for leave to amend fails to comply with this District's Local Rules of Civil Procedure.  In particular, Local Rule 15(a) provides that "[a] movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion.  The proposed amended pleading must be a complete pleading superseding the original pleading in all respects.  No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference."  Further, Local Rule 15(b) provides that "[u]nless the movant is proceeding *pro se*, the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format."  Plaintiff's cross-motion does not comply with either of these requirements, and the Court would be justified in denying leave to amend on this basis.

Moreover, "[a]lthough under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." *Murdaugh v. City of New York*, No. 10 CIV. 7218 HB, 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011); *see also see Lucente v. Int'l*


*Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (citation omitted)). Here, the sole amendment Plaintiff seeks to make is to plead that she served a notice of claim as required by Education Law § 3813. However, even if Plaintiff timely served a notice of claim, that does not change the fact that Plaintiff did not file this lawsuit within Education Law § 3813's one-year statute of limitations. Accordingly, Plaintiff's proposed amendment would not save any of her state law claims, and amendment would be futile.

## CONCLUSION

For the foregoing reasons, Defendants motion to dismiss (Dkt. 2) is denied to the extent it is brought pursuant to Rule 12(b)(5), denied as to Plaintiff's First Amendment retaliation and deprivation of due process claims against the Board and the School to the extent it is brought pursuant to Rule 12(b)(6), and granted pursuant to Rule 12(b)(6) as to all other causes of action. Plaintiff's cross-motion for leave to amend (Dkt. 6) is denied. The Clerk of Court is directed to terminate Martina Baker as a defendant. The remaining Defendants shall file an answer to the complaint in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   March 11, 2021
         Rochester, New York